# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NORTH CAROLINA WESTERN DIVISION

KCHM, INC. f/k/a FDH, INC.,
and AMERISURE INSURANCE COMPANY,

        Plaintiffs,

v.                                     CIVIL ACTION NO: 5:17-cv-00018

MID-CONTINENT CASUALTY COMPANY
and NAVIGATORS INSURANCE COMPANY,

        Defendants.

## COMPLAINT

(Jury Trial Demanded)

NOW COME THE PLAINTIFFS, KCHM, Inc., formerly known as FDH, Inc. ("KCHM") and Amerisure Insurance Company, by and through their undersigned counsel, and pursuant to, among other things, Rules 8 and 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, hereby allege and say as follows:

## INTRODUCTION

1.      This is an action for unfair or deceptive trade practices, breach of contract, breach of the duty of good faith and fair dealing, and for declaratory relief to determine and resolve questions of actual controversy concerning the availability of insurance coverage for KCHM.

2.      KCHM's claims for unfair and deceptive trade practices, breach of contract and breach of the duty of good faith and fair dealing arise out of Defendants' conduct with respect to their handling of KCHM's insurance claims, including without limitation their unreasonable 18-month delay in making a determination of coverage on KCHM's claims, their denial of the

claims in reliance on a clearly erroneous interpretation of North Carolina law, their bad faith attempts to discharge their duties to KCHM without actually fulfilling their obligations, and Mid-Continent's lawsuit against KCHM seeking to interplead its policy proceeds and obtain a discharge of its contractual obligations to KCHM.

3.      KCHM's claim for declaratory relief arises from the general liability insurance policy issued by Defendant Mid-Continent Casualty Company ("Mid-Continent"), policy No. 04-GL-000888641 (the "Mid-Continent Policy," a true and accurate copy of which is attached hereto as **Exhibit 1**), and the commercial excess liability policy issued by Defendant Navigators Insurance Company ("Navigators"), policy number HO13EXC796873IV (the "Navigators Policy," a true and accurate copy of which is attached hereto as **Exhibit 2**).  The Mid-Continent Policy and the Navigators Policy were issued to S&S Communications Specialists, Inc. ("S&S Communications").  KCHM seeks a declaration that it is entitled to defense and indemnity under these policies for the Underlying Civil Actions (as defined below).

4.      This action stems from seven (7) separate underlying lawsuits filed by individual plaintiffs against S&S Communications, SBA Communications Corporation d/b/a SBA Network Services, LLC, SBA Towers, LLC, SBA Towers, Inc., and SBA Infrastructure, LLC; FDH, Inc.; FDH Engineering, Inc.; FDH Velocitel; Summit Park Volunteer Fire Association d/b/a Summit Park Volunteer Fire Department; and Brenda Fragmin, for compensation from alleged damages suffered during the collapse of a cell phone tower in Despard, West Virginia (individually, collectively and/or in any combination, the "Underlying Civil Actions"), and an adversary proceeding filed by Mid-Continent in the S&S Communications' Chapter 7 bankruptcy liquidation in the United States Bankruptcy Court for the Eastern District of Oklahoma in which it asserts that the Mid-Continent Policy proceeds are assets of the bankruptcy estate and in which

it is seeking to interplead the total dollar amount of its policy limits into the Bankruptcy Court (the "Interpleader Action").

5.  Amerisure Insurance Company's claim seeks to recover the costs and fees expended by Amerisure to defend KCHM and SBA Communications Corporation ("SBA") in the Underlying Civil Actions and the Interpleader Action.

## JURISDICTIONAL MATTERS

6.  Plaintiff KCHM (formerly known as FDH, Inc.) is a construction management firm organized under the laws of the State of North Carolina, with a principal place of business in Raleigh, North Carolina. Although the Underlying Civil Actions and referenced contract language specifically refers to FDH, Inc., FDH, Inc. is now known as KCHM, Inc. and is referred to as KCHM for the entirety of this Complaint.

7.  Plaintiff Amerisure Insurance Company ("Amerisure") is a foreign corporation organized under the laws of the State of Michigan, with its principal office address at 26777 Halsted Road, Farmington Hills, MI 48331-3586.

8.  Defendant Mid-Continent is a foreign corporation organized under the laws of the State of Ohio, with a principal office address of 1437 South Boulder, Ste. 200, Tulsa, Oklahoma 74101, and is an insurance company licensed to do business in the State of North Carolina.

9.  Defendant Navigators is a foreign corporation organized under the laws of the State of New York, with a principal office address of 400 Atlantic Street 8th Floor Stamford, CT. Upon information and belief, Navigators is an insurance company licensed to do business in the State of North Carolina.

3

10.     The parties are of diverse citizenship and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of costs and interest.  The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

11.     The matters in controversy between the parties involve the obligations of Mid-Continent and Navigators to provide a defense and indemnity to KCHM in the Underlying Civil Actions referred to above, pursuant to the additional insured status of KCHM, as well as the terms of that certain contract known as the Master Subcontract Agreement between KCHM and S&S Communications dated May 9, 2013 (the "MSA," a true and accurate copy of the MSA is attached hereto as **Exhibit 3**).

## FACTUAL ALLEGATIONS

### The Project to Modify the Tower

12.     In 2013, SBA Communications Corporation ("SBA") contracted with FDH Engineering, Inc., now known as KCHM and Associates, Inc. ("KCHM and Associates") to design plans for structural modifications to a cell phone tower (the "Tower") at a site known as "Despard (Tower One)" located at 9141 Murphy Road, Clarksburg, West Virginia (the "Project").  This Tower is owned by SBA and/or an affiliate. SBA engaged KCHM to serve as the construction manager for the Project.

13.     KCHM and Associates created modification drawings for the completion of the Project and KCHM requested bids from pre-qualified contractors for the Project work.

14.     Prior to putting the Project out for bid, KCHM and S&S Communications had entered into the MSA, under which S&S Communications was pre-qualified to enter into subcontracts with KCHM.

4

15.     The MSA provides, *inter alia*, that S&S Communications will maintain insurance and name KCHM as an additional insured, and maintain liability coverage at a minimum of one million dollars ($1,000,000.00) per occurrence and two million dollars ($2,000,000) in the aggregate, and five million dollars ($5,000,000.00) in umbrella coverage.  Further, the MSA provides that the insurance policies maintained by S&S Communications, in addition to including KCHM as an additional insured, "shall provide for a waiver of subrogation in favor of [KCHM] and Client [SBA] … ."  MSA, Section 12, Insurance.

16.     Subject to the MSA, and following the successful bid of S&S Communications, KCHM and S&S Communications contracted for S&S Communications to perform the structural modifications to the Tower.  Following S&S Communications' bid for the Project, KCHM issued to S&S Communications KCHM's Subcontract Number T-1305631700 regarding the Project, which is dated November 12, 2013 and which is in the amount of $242,982 (the "Subcontract").

17.     The Subcontract is a valid contract binding upon S&S Communications and is governed by and subject to the terms of the MSA.

18.     The purpose of the Project was to structurally modify the Tower so as to increase its ability to support additional telecommunications equipment contemplated to be placed on the Tower.

19.     The Tower was a 340-foot, three-sided steel structure supported in part by guy wires.  Internal support for the Tower included steel beams on each face of the Tower, including steel beams that ran diagonally from one leg of the Tower to an adjacent leg, known as "diagonals."  The diagonals were bolted to the legs of the Tower and typically a diagonal on the Tower shared a common bolt with the diagonal above it and the diagonal below it.

20.     The Project involved, among other things, the replacement of specified diagonals with steel beams that were thicker and stronger.

21.     KCHM contracted with S&S Communications to perform all construction work needed for the Project, including the replacement of the diagonals, as specified in the engineered construction drawings that were provided to S&S Communications.

22.     Prior to working on the Tower, S&S Communications had performed many other similar structural modifications to operational cell phone towers, both for KCHM and other companies.

23.     The construction schedule for the Project called for S&S Communications to begin its work by January 2, 2014 and to finish its work by February 28, 2014.

### S&S Communications and Its Employees Cause the Tower to Collapse

24.     On Saturday morning on February 1, 2014, there was a break in the harsh winter weather in the mountains of West Virginia where the Tower was located. Taking advantage of this day of mild weather, S&S Communications had one of its field crews performing work on the Tower, including the removal and replacement of diagonals. S&S Communications' field crew working on the Project at the Tower site that day consisted of six (6) S&S Communications' employees: James Kenneth White; Joe Neal; Terry Richards; Kyle Kirkpatrick; Jerry Hill; and Randall McElhaney. The crew foreman/supervisor for the Project that day was James Kenneth White.

25.     On February 1, 2014, the aforementioned employees of S&S Communications removed approximately five (5) diagonals from the Tower at one time, removing two diagonals each on two sides of the Tower, and a fifth diagonal from the third side of the Tower.

6

26.     In connection with their removal of diagonals, S&S Communications' employees also loosened a total of six (6) diagonals above and below the diagonals that were removed, and these loosened diagonals were on all three sides of the Tower.

27.     S&S Communications' employees did not use temporary bracing while removing and/or loosening the above-referenced diagonals.

28.     As a result of the actions and/or omissions of the S&S Communications' employees, the Tower collapsed on February 1, 2014, causing the death of S&S Communications' employees Kyle Kirkpatrick and Terry Lee Richard, and injury to S&S Communications' employees Randal McElhaney and Jerry Hill.

29.     The only person who supervised the employees who were working on the Tower at the time the Tower collapsed, and who was physically present at the Tower site at the time of the Tower collapse, was an employee of S&S Communications.  No KCHM employees were at the Project site on the day the Tower collapsed.

30.     When the Tower collapsed it hit and damaged an adjacent cell phone tower (the "Second Tower"), causing it to become weakened and unstable, resulting in the Second Tower visibly moving and swaying.  After the arrival of emergency personnel, the Second Tower also collapsed.

31.     When the Second Tower collapsed, a portion of it struck Nutter Fort Volunteer Fire Department firefighter Michael Garrett, who later died from his injuries.

32.     KCHM and KCHM and Associates have at all times denied any liability in connection with the collapse of the Tower or the Second Tower and/or any of the injuries alleged by the plaintiffs in the Underlying Civil Actions.

7

33.     Following an investigation of the Tower's collapse by the federal government's Occupation Safety and Health Administration ("OSHA"), on July 23, 2014, OSHA cited and fined S&S Communications for multiple failures to comply with applicable safety regulations in connection with its work on the Tower which led to the Tower's collapse. OSHA did not cite or fine KCHM regarding the Tower's collapse.

**<u>The Underlying Civil Actions</u>**

34.     In the time since the collapse of the Tower and the Second Tower, the Underlying Civil Actions were filed. These civil actions consist of seven (7) individual lawsuits all naming KCHM, as well as other entities, as defendants.

35.     The first underlying lawsuit is captioned: *Faith Garrett, Administratrix of the Estate of Michael D. Garrett, v. S&S Communications Specialists, Inc., et al.,* Civil Action No. 15-C-218-3. This matter was assigned to and is currently pending before the Honorable James A. Matish in the Circuit Court of Harrison County, West Virginia. This lawsuit seeks damages for the death of firefighter Michael D. Garrett, who was killed while responding to the Tower collapse. The plaintiff has demanded $6 million for the resolution of this case.

36.     The second underlying lawsuit is captioned: *Randall McElhaney, Plaintiff, v. SBA Communications Corp., et al., Defendants*, Civil Action No. 1:15-Cv-204. This matter has been removed to federal court and is currently pending before the Honorable Irene M. Keeley in the U.S. District Court for the Northern District of West Virginia. The civil action seeks damages for injuries that S&S employee, Randal McElhaney, suffered during the collapse of the Tower. The plaintiff has demanded $1.5 million for the resolution of this case.

37.     The third underlying lawsuit is captioned: *J. Ron Wright, in his Capacity as Administrator of the Estate of Terry Lee Richard, Jr., Plaintiff, v. SBA Communications Corp., et*

*al., Defendants,* Civil Action No. 1:15-Cv-205. This matter has been removed to federal court and is currently pending before the Honorable Irene M. Keeley in the U.S. District Court for the Northern District of West Virginia. The civil action seeks damages for the death of S&S employee, Terry Lee Richard, Jr., who was killed during the collapse of the Tower. The plaintiff has demanded $4 million for the resolution of this case.

38.     The fourth underlying lawsuit is captioned: *Jerry Hill, Plaintiff, v. SBA Communications Corp., et al., Defendants*, Civil Action No. 1:15-Cv-206. This matter has been removed to federal court and is currently pending before the Honorable Irene M. Keeley in the U.S. District Court for the Northern District of West Virginia. The civil action seeks damages for injuries that S&S employee, Jerry Hill, suffered during the collapse of the Tower. The plaintiff has demanded $4 million for the resolution of this case.

39.     The fifth underlying lawsuit is captioned: *Kyle Kirkpatrick, Plaintiff, v. SBA Communications Corp., et al., Defendants*, Civil Action No. 1:15-Cv-207. This matter has been removed to federal court and is currently pending before the Honorable Irene M. Keeley in the U.S. District Court for the Northern District of West Virginia. The civil action seeks damages for the death of S&S employee, Kyle Kirkpatrick, who was killed during the collapse of the cell Tower. The plaintiff has demanded $7 million for the resolution of this case.

40.     The sixth underlying lawsuit is captioned: *True Knowledge Ministries, Inc. ("TKMI"), v. SBA Communications Corp., et al., Defendants,* Civil Action No. 1:15-Cv-24. This matter has been removed to federal court and is currently pending before the Honorable Irene M. Keeley in the U.S. District Court for the Northern District of West Virginia. The civil action seeks economic damages and/or lost profits purportedly resulting from the destruction of radio equipment and the loss of the plaintiff's television signal following the collapse of the

Tower. Prior to filing suit, the plaintiff demanded payment in the amount of $850,000 to resolve this case.

41.     The seventh underlying lawsuit is captioned: *SBA Telecommunications, LLC, as successor in interest to SBA Telecommunications, Inc. and SBA Towers, LLC ("SBA"), Plaintiffs, v. S&S Communication Specialists, Inc. and FDH Engineering, Inc.,* Civil Action No. 1:15-CV-228. This matter was filed in federal court and is currently pending before the Honorable Irene M. Keeley in the U.S. District Court for the Northern District of West Virginia. The civil action seeks economic damages allegedly sustained by SBA in the collapse. SBA has suggested over $1.7 million in damages resulting from the Tower collapse.

42.     KCHM timely sought insurance coverage (defense and indemnity) from Mid-Continent and Navigators, pursuant to its additional insured status under the applicable insurance policies issued to S&S Communications.

### The Master Subcontractor Agreement

43.     The MSA between KCHM and S&S Communications defines S&S Communications as the "Subcontractor" and SBA as the "Client," and it contains the following pertinent provisions:

**12.0 INSURANCE**

12.1 Subcontractor shall, at its own expense, carry and maintain insurance with carriers satisfactory to FDH as follows:

12.1. 1 Minimum Limits of Coverage:

   i. Workers Compensation Statutory

   ii. Employer's Liability

         -Each Accident (policy limits) $1,000,000

         -Disease (each employee) $1,000,000

         -Disease (aggregate) $1,000,000

   iii. Commercial General Liability (including Contractual
         Liability Insurance)

-Per Occurrence $1,000,000

-Aggregate $2,000,000

iv. Comprehensive or Commercial Automobile Liability

-CSL for bodily injury & property $1,000,000
damage on owned, non-owned and hired vehicles.

v. Umbrella Coverage $5,000,000 (Heavy Construction
Subcontractors)

12.2 Prior to performing any Work, Subcontractor shall have its insurance carrier or broker furnish FDH with Certificates of Insurance certifying that all insurance required under this Agreement is in full force and effect, citing the expiration date of each policy and stating that the insurance will not be canceled or materially modified during the term of this Agreement without thirty (30) days prior written notice to FDH. The policies required herein shall provide for a waiver of subrogation in favor of FDH and Client. The Certificates of Insurance shall name FDH and Client as an additional insured under each policy of insurance, except for Professional Liability, Worker's Compensation and Employer's Liability coverage. Receipt by FDH of the Certificates of Insurance required herein shall be a prerequisite to commencement of and payment for the Work.

## 14.0. INDEMNIFICATION

14 .1.1 To the extent permitted by applicable law, Subcontractor shall defend, indemnify and hold harmless FDH and Client and all of its parent companies, subsidiaries, affiliates and Subcontractors, including their respective officers, directors, employees, principals, partners, agents, successors and assigns, in accordance with, and to the same extent required by the obligations to defend, indemnify and hold Client harmless which are required of FDH In the Prime Agreement.

14.1.2. Subcontractor shall further defend, indemnify and hold harmless FDH and Client and all of its parent companies, subsidiaries, affiliates and subcontractors, including their respective officers, directors, employees, principals, partners, agents, successors and assigns, (collectively "indemnitees") from and against any and all actions, suits, arbitrations, administrative proceedings, demands and claims for any and all damages, injunctive or any other relief based on any cause of action whatsoever (sometimes Individually "Claim" and sometimes collectively "Claims"), that may be brought or made against, or incurred by, indemnitees on account of liabilities, damages, losses, cost, expenses, settlements, judgments, awards, and governmental penalties and sanctions, including reasonable attorneys' fees and experts' fees, including those attributable to bodily injury (including death, personal injury and property damage (sometimes

11

individually "Liability" and sometimes collectively "Liabilities"), caused by, arising out of, or contributed to by any acts, errors, omissions or conduct of Subcontractor, its employees, subcontractors, or agents, related in any way to the Work, except to the extent the Claims or Liabilities are determined to have been caused solely by the negligence or the willful misconduct of FDH.

14.2 Subcontractor's indemnity obligations contained in this Agreement Include any Claims made against FDH by Subcontractor's employees and any Liabilities associated therewith, except for those Claims that are determined to have been caused solely by the negligence or the willful misconduct of FDH. The Indemnity obligations of this section shall not be restricted by any limitation on the amount *or* type of damages, compensation or benefits payable by or for Subcontractor under worker's compensation acts, disability benefits acts, or other employee benefit acts.

44. Moreover, Article 16.1 of the MSA has an additional indemnification clause that provides that S&S Communications

shall abide by, at [S&S Communication's] sole expense, laws, rules, and regulations of any applicable governmental entity concerning safety and environmental protections, including but not limited to the Occupational Safety and Health Act ("OSHA"), all rules and regulations established pursuant thereto, and all amendments and supplements thereto, and rules and regulations promulgated by any State or locally operated safety and health agency established thereto. In addition to [S&S Communication's] indemnification obligations set for[th] in Article 14, [S&S Communication] agrees to indemnify, defend and hold harmless FDH from any and all liability and damages, fines, costs, and attorneys' fees incurred by FDH as a result of [S&S Communication] actions or [S&S Communication's] failure or alleged failure to comply with any and all terms of this paragraph.

### The Mid-Continent Policy

45. Pursuant to provisions of the MSA, S&S Communications has the Mid-Continent Policy, which has a policy period of November 1, 2013 through November 1, 2014 and was in effect at the time of the collapse of the Tower and the second Tower.

46. Upon information and belief, Mid-Continent has accepted S&S Communication's claims for insurance coverage for claims arising out of the collapse of the Tower and the Second

12

Tower under the Mid-Continent Policy, including the Underlying Civil Actions, and Mid-Continent has provided a defense to S&S Communications in the Underlying Civil Actions.

47.     The Mid-Continent Policy names KCHM as an additional insured pursuant to an endorsement, which includes the following pertinent provisions:

**SCHEDULE**

Name of Person or Organization:
   FDH, Inc.

1.     **WHO IS AN INSURED** (Section II) is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability caused, in whole or in part, by your performance of "your work" for that insured. However:

   A. The insurance afforded to such additional insured only applies to the extent permitted by law; and

   B. If coverage provided to the additional insured is required by written "insured contract", the insurance afforded to such Additional Insured will not be broader than that which you are required by the written "insured contract' to provide for such additional insured.

2.     With respect to 1. above the following additional provisions apply:
   **4. Other Insurance**
   The insurance afforded by this Coverage Part is primary insurance and we will not seek contribution from any other insurance available to the insured unless the other insurance is provided by a contractor other than the above named additional insured. We shall be considered as excess insurance of any other insurance provided by a contractor other than the above named additional insured.

   This amendment applies only when you have agreed by written "insured contract" to designate the person or organization listed above as an additional insured subject to all provisions and limitations of this policy.

All other conditions remain unchanged.

13

Mid-Continent Policy, endorsement ML 13 57 (04 13).

48.     The Mid-Continent Policy further contains the following pertinent provisions:

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B.

Mid-Continent Policy, Commercial General Liability Coverage Form (CG 00 01 04 13), Section

I.A.1.

49.     The Mid-Continent Policy contains the following definition of "insured contract":

**SECTION V- DEFINITIONS**
**9.0      Insured Contract**
f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. However, such part of a contract or agreement shall only be considered an "insured contract" to the extent your assumption of the tort liability is permitted by law. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Mid-Continent Policy, Section V. ¶ 9.0, as modified by endorsement CG 24 26 04 13.

14

**The Navigators Policy**

50.     S&S Communications also obtained the Navigators Policy, which provides excess insurance over the Mid-Continent Policy. The Navigators Policy has a policy period of November 1, 2013 through November 1, 2014 and was in effect at the time of the collapse of the Tower and the Second Tower.

51.     The Navigators Policy has the following pertinent policy provisions:

SECTION I – COVERAGE

1.  Insuring Agreement
    A.  Excess Liability
        1. We will pay on behalf of the insured and in excess of "underlying limits" those sums the insured becomes legally obligated to pay as damages for "loss" to which this insurance applies. This insurance applies only if:
        a. the "loss" is caused by an "event" that takes place in the coverage territory;
        b. the "loss" occurs during the "policy period;" and
        c. the "controlling underlying insurance" applies to the "loss."

        2. If an aggregate limit of "controlling underlying insurance" is exhausted by the payment of judgments or settlements to which this insurance applies, or would have applied but for the amount of the damages, this insurance will apply in place of the "controlling underlying insurance" until we have paid our applicable Limits of Insurance.

        3. When paragraph 2, above applies, ending the "controlling underlying insurance" obligations to investigate and settle claims or defend suits against the insured, we have the right and duty to investigate claims and defend suits which seek damages to which this insurance applies. Our right and duty to defend end when we have paid our applicable Limits of Insurance.

SECTION II - WHO IS AN INSURED

The WHO IS AN INSURED section of the "controlling underlying insurance" is made part of this policy. Any person or organization

15

that is an insured in "controlling underlying insurance" is an
insured in this policy to the same extent.

Navigators Policy, Commercial Excess Liability Coverage Part (NAV-EXC-001 (04/10)),
Section I.A.1-3 and Section II.

52.     The Mid-Continent Policy is one of the policies included within the Navigators
Policy definition of "controlling underlying insurance."

53.     Upon exhaustion of the Mid-Continent Policy limits by the payment of judgments
or settlement, the Navigators Policy provides insurance coverage to S&S Communications for
claims arising out of the collapse of the Tower and the Second Tower under the Mid-Continent
Policy, including the Underlying Civil Actions.

54.     Upon information and belief, Navigators has implicitly or expressly
acknowledged that the Navigators Policy has been or will be triggered to provide insurance to
S&S Communications for claims arising out of the collapse of the Tower and the Second Tower,
including the Underlying Civil Actions.

**Defendants' Bad-Faith Failure to Defend and Indemnify KCHM**

55.     The collapse of the Tower and the Second Tower, and the deaths, injuries and
property damage alleged in the Underlying Civil Actions, occurred during the policy periods of
the Mid-Continent Policy and the Navigators Policy.

56.     Given KCHM's status as an additional insured on the Mid-Continent Policy, Mid-
Continent owes KCHM indemnity and defense for the Underlying Civil Actions.  Mid-
Continent's obligations to KCHM do not expire until its policy limits have been exhausted by the
payment of judgments or settlements under the coverages provided by the policy.

57.     Pursuant to the Navigators Policy, Navigators owes KCHM indemnity and a
defense, upon the effective exhaustion of the Mid-Continent Policy.

16

58. Given the number of lawsuits involved in the Underlying Civil Actions and the extent and nature of the claims asserted therein, the Mid-Continent Policy is very likely to be exhausted, triggering Navigators' obligation to provide KCHM with defense and indemnity. Navigators has acknowledged that the Navigators Policy has been or very likely will be triggered, including by seeking to tender its policy limits in connection with the Underlying Civil Actions.

59. KCHM has timely requested that Mid-Continent and Navigators provide KCHM with coverage in the Underlying Civil Actions.

60. Despite KCHM's timely request for a defense and indemnity by Mid-Continent and Navigators, Mid-Continent and Navigators have denied coverage to KCHM.

61. In February 2014, in the days immediately following the collapse of the Tower, KCHM notified its commercial general liability and umbrella insurer Amerisure of the Tower collapse. Shortly thereafter, in February 2014, Amerisure retained counsel on behalf of KCHM in connection with the investigation of the Tower collapse and the defense of anticipated claims related to same.

62. KCHM, through its insurer Amerisure, sent correspondences to Defendants notifying them of KCHM's claims for insurance under Defendants' policies for the Underlying Civil Actions and requesting that they accept the tender of those claims.

63. Specifically, on March 7, 2014, Amerisure presented a tender for the investigation, defense and indemnity of its insured, KCHM, to Mid-Continent for any claim that might result from the collapse of the Tower and the Second Tower. Amerisure sent multiple follow-up correspondences to Mid-Continent, but Mid-Continent did not respond until six months later by its letter dated September 8, 2014, stating that it was reviewing the applicable

17

contracts, including the MSA, "to determine the validity of the contracts," and it could not accept the tender at that time.

64. Amerisure made attempts to notify S&S Communications' umbrella or excess policy carrier of KCHM's tender of claims, but was unable to do so as a result of S&S Communications giving incorrect information about its umbrella/excess carrier. Ultimately it was discovered that Navigators was S&S Communications' excess carrier. On November 17, 2014, Amerisure presented to Navigators a tender for the investigation, defense and indemnity of its insured, KCHM, for any claim that might result from the collapse of the Tower or the Second Tower with regard to amounts in excess of the Mid-Continent Policy limits.

65. Navigators responded by letter dated December 4, 2014, stating that "Mid-Continent is still investigating whether FDH, Inc. is an insured under its policy for claims arising out of the tower collapses."

66. By letter dated September 18, 2015, approximately eighteen (18) months after KCHM provided notice of its claim, Mid-Continent and Navigators, through their shared counsel, denied coverage to KCHM with respect to the claims asserted in the Underlying Civil Actions. A true and accurate copy of this coverage denial letter is attached hereto as **Exhibit 4**.

67. Mid-Continent and/or Navigators failed to defend KCHM during the entirety of the approximately 18-month period of time in which it and/or they were allegedly investigating the claim, and to this date they continue to fail to provide a defense.

68. Mid-Continent and Navigators' denial of coverage to KCHM came more than one year after OSHA had completed its investigation of the collapse of the Tower and OSHA's citation and penalties issued to S&S Communications.

69.     At the time Mid-Continent and Navigators denied coverage to KCHM, they knew that OSHA had determined that their insured, S&S Communications, had violated applicable safety regulations and that their insured had been cited and fined.

70.     At the time Defendants denied coverage to KCHM, one or more of the Underlying Civil Actions had been filed.

71.     At the time Mid-Continent and Navigators denied coverage to KCHM, they knew that S&S Communications was responsible for the collapse of the Tower and the Second Tower.

72.     At the time Mid-Continent and Navigators denied coverage to KCHM, they knew that S&S Communications was responsible for the deaths, injuries and/or property damage resulting from the collapse of the Tower and the Second Tower.

73.     At the time Mid-Continent and Navigators denied coverage to KCHM, they knew or should have known that KCHM had no liability for the claims asserted against it in the Underlying Civil Actions.

74.     At the time Mid-Continent and Navigators denied coverage to KCHM, they knew or should have known that KCHM had meritorious defenses to the claims being asserted against it in the Underlying Civil Actions.

75.     At the time Mid-Continent and Navigators denied coverage to KCHM, KCHM and Amerisure had already incurred expenses and attorneys' fees in connection with its investigation and anticipated defense of the Underlying Civil Actions.

76.     At the time Mid-Continent and Navigators denied coverage to KCHM, one or the other, or both, knew or should have known that KCHM or Amerisure had been incurring expenses and attorneys' fees in connection with investigating the collapse of the Tower and/or an anticipated defense of the Underlying Civil Actions.

77.     Since the time Mid-Continent and Navigators denied coverage to KCHM, KCHM and Amerisure have continued to incur expenses and attorneys' fees in connection with its investigation and litigation of the Underlying Civil Actions.

78.     Neither Mid-Continent nor Navigators have reimbursed KCHM or Amerisure for any expense or attorneys' fees that KCHM or Amerisure has incurred by reason of the collapse of the Tower, the Second Tower, investigation of those events or in connection with KCHM having to litigate matters in the Underlying Civil Actions.

79.     Mid-Continent and Navigators denied coverage to KCHM with respect to the Underlying Civil Actions without any legitimate basis for doing so.

80.     Despite having the MSA since at least September 8, 2014, Mid-Continent's denial of coverage was based solely on its contention that KCHM was not an additional insured because the indemnification provisions of the MSA were purportedly void pursuant to North Carolina General Statutes § 22B-1.

81.     Mid-Continent's allegation that the indemnification provisions in MSA is void is incorrect as a matter of law and is based on an unreasonable interpretation of the MSA and/or applicable law.

82.     Upon information and belief, at all relevant times Navigators has never repudiated or disagreed with Mid-Continent's rationale or basis for denying coverage to KCHM, has explicitly or tacitly relied upon or approved such rationale or basis, and has acted consistent with Mid-Continent's rationale or basis in denying coverage to KCHM.

83.     Mid-Continent and Navigators have denied coverage to KCHM in bad faith and in violation of their legal duties to KCHM, their insured.

84.     Mid-Continent and/or Navigators have proposed utilizing the entirety of the insurance proceeds of their respective policies to settle only a portion of the Underlying Civil Actions, which payments would be far in excess of any reasonable valuation of the claims to be settled, and thereby deprive KCHM of insurance proceeds that could be used to settle with the remainder of the Plaintiffs.  For settlement purposes, Mid-Continent and/or Navigators have recognized that KCHM and SBA may be insureds under their policies and have made settlement offers for the benefit of KCHM and SBA.

85.     Mid-Continent and/or Navigators have sought to force all claimants, including KCHM, to agree to release claims that they have against third parties in connection with the Tower collapse without KCHM being released by those third parties.

## Mid-Continent's Interpleader Action Filed Against KCHM

86.     On July 20, 2016, S&S Communications filed for Chapter 7 bankruptcy liquidation in the United States Bankruptcy Court for the Eastern District of Oklahoma (the "S&S Bankruptcy").

87.     On November 28, 2016, Mid-Continent filed an adversary proceeding in the S&S Bankruptcy in which it asserts that the Mid-Continent Policy proceeds are assets of the bankruptcy estate and in which it is seeking to interplead the total dollar amount of its policy limits into the Bankruptcy Court (the "Interpleader Action").  In its Interpleader Action, Mid-Continent has sued KCHM, among others.

88.     Mid-Continent's Interpleader Action is an improper effort to exhaust its policy limits and purportedly cut-off its liability with respect to providing defense and indemnity to KCHM.

89.     Mid-Continent's Interpleader Action was asserted in furtherance of its bad faith denial of coverage for KCHM.

90.     In the complaint that Mid-Continent filed in its Interpleader Action, Mid-Continent requests that the Bankruptcy Court enter an order whereas all of the parties, including KCHM, are:

> temporarily enjoined during the pendency of this suit, and thereafter permanently and perpetually enjoined, from commencing any proceeding or prosecuting any claim against Mid-Continent and/or its agents in any state or federal court or other forum, with respect to the Mid-Continent Policy[.]

*See* Complaint for Interpleader Relief, Prayer of Relief, ¶ B.

91.     Mid-Continent further requested that the Bankruptcy Court enter an order dismissing it with prejudice, and discharging it from any liability in connection to the Mid-Continent Policy.

92.     Mid-Continent filed its Interpleader Action despite its obligations of defense and indemnity owed to its insureds, including KCHM, under the Mid-Continent Policy.

93.     In the Interpleader Action, KCHM filed a motion to dismiss Mid-Continent's interpleader complaint because Mid-Continent incorrectly and wrongfully asserts that the insurance proceeds from the Mid-Continent Policy are assets of the bankruptcy estate and that the Bankruptcy Court has jurisdiction over the claims asserted in the Underlying Civil Actions.

94.     In making its claims in the Interpleader Action, Mid-Continent has again placed its own interests above that of its insured by refusing to honor its obligations to KCHM and by taking actions for its sole benefit and much to the detriment of its insured, KCHM, who has been forced to incur further unnecessary litigation expenses in connection with the Interpleader Action.

22

95.     Navigators has at all relevant times relied upon Mid-Continent's actions or omissions and/or coordinated with Mid-Continent, in an effort to reap the benefits of Mid-Continent's wrongful and tortious actions, and Navigators has harmed KCHM through Navigators' own inaction, delay and wrongful conduct as alleged above.

## COUNT I – UNFAIR OR DECEPTIVE TRADE PRACTICES
### (Against Defendant Mid-Continent)

96.     KCHM hereby re-alleges and incorporates by reference the allegations set forth in the prior paragraphs of this Complaint.

97.     As an entity engaged in the business of insurance in North Carolina, Defendant Mid-Continent is a "person," as defined by North Carolina General Statutes § 58-63-5, that is subject to the provisions of Article 63 of Chapter 58 of the North Carolina General Statutes, and its actions and omissions as set forth herein and as may be proved at trial were in and affecting commerce.

98.     Mid-Continent has a legal duty to, among other things, make a prompt and full investigation of KCHM's claim for a defense and indemnification, provide a prompt determination of coverage to KCHM, and to otherwise engage fairly with KCHM under its duty of fair dealing and good faith to KCHM under their respective policies.

99.     The conduct of Mid-Continent as set forth herein and as may be proved at trial, including without limitation its unreasonable 18-month delay in responding to the tender of KCHM's claims, its denial of the claims in reliance on a clearly erroneous interpretation of North Carolina law, and its bad faith attempts to discharge its duties to KCHM without actually fulfilling its obligations, constitutes unfair and/or deceptive acts and practices under Chapter 75 of the North Carolina General Statutes, and violations of Chapter 58, including but not limited to North Carolina General Statutes §§ 58-63-15(11)(b), (c), (d), (e)(f), (g) and/or (n).

100.    As a direct and proximate result of Mid-Continent's acts and omissions, KCHM has suffered and continues to suffer actual, consequential, and incidental damages in an amount to be proved at trial, including, but not limited to attorneys' fees, costs, and litigation expenses related to the claims asserted in the Underlying Civil Actions and the Interpleader Action.

101.    Pursuant to North Carolina General Statutes § 75-1.1, *et seq.*, KCHM is entitled to recover from Mid-Continent the costs and attorneys' fees that KCHM incurs in this action, as well as treble damages.

## COUNT II -- COMMON LAW BAD FAITH
### (Against Defendant Mid-Continent)

102.    KCHM hereby re-alleges and incorporates by reference the allegations set forth in the prior paragraphs of this Complaint.

103.    Upon information and belief, Mid-Continent's unfounded refusal and failure to defend and indemnify KCHM constitutes a refusal to pay a valid claim in bad faith.

104.    Upon information and belief, Mid-Continent's bad faith refusal to pay this valid claim was willful, wanton and in conscious disregard of their duty to defend and indemnify KCHM, and thus constitutes aggravating and outrageous conduct.

105.    As a direct and proximate result of Mid-Continent's bad faith conduct, KCHM has suffered and continues to suffer actual, consequential, and incidental damages.

106.    Because, upon information and belief, the above-described conduct by Mid-Continent constitutes fraud, malice, and/or willful and wanton conduct, an award of punitive damages is also justified under applicable law.

## COUNT III – BREACH OF CONTRACT CLAIM
### (Against Defendant Mid-Continent)

107.    KCHM hereby re-alleges and incorporates by reference the allegations set forth in the prior paragraphs of this Complaint.

108.    KCHM is an additional insured under the Mid-Continent Policy, which is a valid and binding contract.

109.    Mid-Continent owes KCHM certain obligations under the Mid-Continent Policy.

110.    Pursuant to the Mid-Continent Policy, Mid-Continent has a duty to provide a defense and indemnity to KCHM in the Underlying Civil Actions.

111.    KCHM has complied with all of its duties and obligations under the Mid-Continent Policy, and has satisfied all conditions precedent to Mid-Continent's duties under the Mid-Continent Policy.

112.    Mid-Continent has breached its contractual obligations to KCHM as set forth herein, including without limitation by wrongfully denying KCHM's claims for coverage of the Underling Civil Actions and by failing to promptly provide a defense to KCHM in the Underlying Civil Actions.

113.    As a direct and proximate result of Mid-Continent's material breaches of its contractual obligations, KCHM has been damaged in a foreseeable way, and will continue to be damaged, all in a principal amount to be determined, plus interest thereon at the highest rate allowed by law.

## COUNT IV – BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING

114.    KCHM hereby re-alleges and incorporates by reference the allegations set forth in the prior paragraphs of this Complaint.

115.    Pursuant to the implied covenant of good faith and fair dealing imposed on all parties to contracts under North Carolina law, Defendants have a duty to exercise good faith toward KCHM and to deal fairly with it.

116.     Defendants have breached their duty of good faith and fair dealing to KCHM as set forth herein.

117.     As a direct and proximate result of Defendants' breaches, KCHM has suffered and continues to suffer actual, consequential, and incidental damages in an amount to be proved at trial.

## COUNT V – DECLARATORY JUDGMENT AS TO DEFENDANTS' COVERAGE OBLIGATIONS TO KCHM FOR THE UNDERLYING CIVIL ACTIONS

118.     KCHM hereby re-alleges and incorporates by reference the allegations set forth in the prior paragraphs of this Complaint.

119.     KCHM, as an additional insured, is a party interested under the Mid-Continent Policy and the Navigators Policy, and whose rights are affected by the policies.  This declaratory judgment action is filed to establish the parties' rights, status, duties, and legal relations under these policies in light of Defendants' refusal to defend or indemnify KCHM in the Underlying Civil Actions.

120.     There is a real and justiciable controversy between KCHM and Defendants regarding their opposing contentions as to Defendants' respective duties to defend and indemnify KCHM in connection with the Underlying Civil Actions, and KCHM is entitled to a declaratory judgment that settles the present issues and affords KCHM relief from the present uncertainty and insecurity as to the rights, status and legal relations between the parties.

121.     KCHM seeks a judicial declaration providing, *inter alia*: (i) that Mid-Continent has a duty to provide a defense to KCHM going forward in the Underlying Civil Actions; (ii) that Mid-Continent has a duty to indemnify KCHM, to the extent of the monetary limits of Mid-Continent's coverage under the Mid-Continent Policy, against losses, if any, incurred by KCHM as a result of any judgment or settlement with respect to the Underlying Civil Actions; (iii) that

Navigators has a duty to provide a defense to KCHM upon the effective exhaustion of the Mid-Continent Policy limits; and (iv) that Navigators has a duty to indemnify KCHM, to the extent of the monetary limits of Navigators' coverage under the Navigators Policy, against losses in excess of the limits of the Mid-Continent Policy, if any, incurred by KCHM as a result of any judgment or settlement with respect to the Underlying Civil Actions.

## COUNT VI – AMERISURE'S CLAIM

122.    Amerisure hereby re-alleges and incorporates by reference the allegations set forth in the prior paragraphs of this Complaint.

123.    Pursuant to the MSA, Mid-Continent Policy and Navigators Policy, Defendants Mid-Continent and Navigators were contractually obligated to provide a defense to KCHM and SBA in the Underlying Civil Actions.

124.    Despite their contractual obligations, Mid-Continent and Navigators refused to provide a defense to KCHM and SBA in the Underlying Civil Actions.

125.    Pursuant to Amerisure's contract for insurance with KCHM and because of the refusal of Mid-Continent and Navigators to honor their contractual obligations to KCHM and SBA, Amerisure has been forced to provide a defense for KCHM and SBA.

126.    As a result of the refusal of Mid-Continent and Navigators to honor their contractual obligations to SBA and KCHM, Amerisure has suffered damages in the form of significant legal fees and expenses paid to defend SBA and KCHM in the Underlying Civil Actions.

127.    Amerisure is entitled to be indemnified by Mid-Continent and Navigators for the purpose of providing a defense to KCHM and SBA in the Underlying Civil Actions.

128.    Amerisure is entitled to the recovery of those legal fees and expenses already incurred in providing a defense for SBA and KCHM in the Underlying Civil Actions.

WHEREFORE, Plaintiffs, KCHM, Inc. and Amerisure Insurance Company, respectfully pray unto the Court as follows:

1.     That KCHM recover from Defendants, jointly and severally, all of KCHM's actual, consequential, and incidental damages caused by the wrongful conduct of Defendants, as alleged above;

2.     That KCHM recover from Mid-Continent treble and/or punitive damages as a result of its unfair and deceptive trade practices, bad faith, and intentional misconduct as alleged above;

3.     That Amerisure be awarded its costs and fees expended in providing a defense to KCHM and SBA;

4.     That Amerisure be reimbursed any indemnity dollars it is required to pay as a result of the Defendants' failures to honor their respective obligations.

5.     That Plaintiffs recover from Defendants, jointly and severally, costs of suit incurred herein, as well as its reasonable attorneys' fees and related expenses, as allowed by law;

6.     That Plaintiffs be awarded pre-judgment and post-judgment interest at the highest rates allowed by law;

7.     That the Court enter a Declaratory Judgment providing *inter alia*: (i) that Mid-Continent has a duty to provide a defense to KCHM going forward in the Underlying Civil Actions; (ii) that Mid-Continent has a duty to indemnify KCHM, to the extent of the monetary limits of Mid-Continent's coverage under the Mid-Continent Policy, against losses, if any, incurred by KCHM as a result of any judgment or settlement with respect to the Underlying Civil Actions; (iii) that Navigators has a duty to provide a defense to KCHM upon the effective exhaustion of the Mid-Continent Policy limits; and (iv) that Navigators has a duty to indemnify

KCHM, to the extent of the monetary limits of Navigators' coverage under the Navigators Policy, against losses in excess of the limits of the Mid-Continent Policy, if any, incurred by KCHM as a result of any judgment or settlement with respect to the Underlying Civil Actions;

8.     For a trial by jury on all claims so triable herein; and

9.     For such other and further relief as this Court deems just and proper.

This the 10th day of January, 2017.

PARRY TYNDALL WHITE

/s/ James C. White
K. Alan Parry, N.C. Bar # 31343
James C. White, N.C. Bar # 31859
Michelle M. Walker, N.C. Bar # 41664
100 Europa Drive, Suite 401
Chapel Hill, NC 27517
(919) 246-4676
(919) 246-9113 fax
aparry@ptwfirm.com
jwhite@ptwfirm.com
mwalker@ptwfirm.com

*Attorneys for Plaintiffs KCHM, Inc. and Amerisure Insurance Company*
